Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence, or rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence AFFIRMS in part and AMENDS in part its Opinion and Award filed herein on June 12, 1996 to comply with the August 7, 1997 Opinion of the North Carolina Court of Appeals.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in the Pre-Trial Agreement filed on April 14, 1994 and at the hearing before the deputy commissioner as:
STIPULATIONS
1. On November 16, 1992 the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and an employment relationship existed between the parties.
2. Nationwide Insurance Company was the workers' compensation carrier on the risk.
3. On November 16, 1992 the plaintiff sustained an injury by accident arising out of and in the course of the employment.
4. At the time of the injury, the plaintiff's average weekly wage was such that plaintiff was entitled to receive the maximum compensation rate of $426.00 per week.
5. Defendants voluntarily paid temporary total disability compensation from November 16, 1992 through June 28, 1993 to the plaintiff.
6. As of the date of the hearing, the plaintiff had not returned to work.
7. The issue for determination is whether the plaintiff is entitled to any additional workers' compensation benefits after June 28, 1993, and if so, to what extent.
***************
The Full Commission affirms in part and modifies in part the findings of fact by the deputy commissioner and finds the following:
FINDINGS OF FACT
1. At the time of the compensable injury, plaintiff was a 39-year-old ambidextrous male who had been employed for almost three years as a lineman with defendant-employer. Plaintiff attended school until the eighth grade and is able to read and write. The plaintiff is capable of reading blueprints for work.
2. Defendant was a contractor who installed telephone poles and lines for various companies.
3. On November 16, 1992 the plaintiff resided in Andrews; however, he was working in Lexington, North Carolina. At the time of the injury, the plaintiff was assisting in pushing cable up a pole with his neck extended when he felt a pop at the base of his neck.
4. On November 17, 1992 the plaintiff was examined by Dr. Victoria Neave, a neurologist in High Point, where he was diagnosed with a cervical strain. Dr. Neave authorized plaintiff to remain out of work for three days.
5. Following plaintiff's continued complaints of neck pain, an MRI was ordered, which disclosed a moderate size spur and disc at C5-6 centrally and to the left with mild flattening of the foramina with a mild central spur at C4-5.
6. On December 15, 1992, plaintiff began treating with Dr. Christeen Kaga, an orthopedist in Franklin, after Dr. Neave suggested he see a doctor closer to his home. At the initial examination, Dr. Kaga diagnosed plaintiff with a cervical strain and recommended outpatient physical therapy and home exercise.
7. On January 8, 1993, plaintiff complained of left arm and leg numbness. Dr. Kaga noted that the left leg numbness should not be related to a neck injury. Her office attempted to telephone plaintiff at home numerous times, but his telephone was busy each time.
8. On or about January 14, 1993, Dr. Kaga was informed by plaintiff's wife that their home had burned down.
9. Plaintiff discontinued the therapy program on January 18, 1993.
10. Dr. Kaga referred plaintiff to neurosurgeon Dr. Richard Weiss, and on February 1, 1993, Dr. Weiss advised that continued conservative treatment be pursued for the cervical strain. Home traction was suggested using eight pounds of weight two to three times per day.
11. On March 2, 1993 plaintiff returned to Dr. Kaga where she recommended a comprehensive cervical rehabilitation program. Plaintiff resisted the recommendation indicating that he did not want to drive the distance from Andrews to Franklin. Dr. Kaga recommended that plaintiff contact vocational rehabilitation for job training and that he continue to home exercise. She advised that he was capable of light work activity.
12. The plaintiff did not contact vocational rehabilitation at any time.
13. On April 13, 1993 plaintiff was seen by Dr. Kaga for follow-up on the cervical strain superimposed on degenerative disc disease and degenerative arthritis. Plaintiff advised that he had been walking three to four miles per day, but he complained of a funny feeling in his arm. He related to Dr. Kaga that his job required him to put cables up in the air, climb poles and put poles up. Dr. Kaga again recommended work hardening. She noted that plaintiff had an inconsistent sensory exam to the pinwheel examination over the entire arm and that plaintiff moved his neck freely and had good range of motion.
14. On April 14, 1993 plaintiff agreed to attend the comprehensive work-hardening program at Health Works in Franklin. Plaintiff was evaluated by Matt Hornsby, MPT, and was referred for an MMPI-2 test with Ben D. Monroe, Ph.D.
15. The MMPI revealed that plaintiff had somatic symptoms related to psychological factors and that plaintiff sought attention and attempted to avoid responsibility through these somatic symptoms.
16. Since March 2, 1993, Dr. Kaga was of the opinion that plaintiff was capable of returning to work which did not require repetitive lifting of 30 to 50 pounds. She has further opined that plaintiff's complaints regarding his left arm were inconsistent with the neck injury. No muscle atrophy was observed, which Dr. Kaga opined would suggest that there was no nerve problem present.
17. On May 10, 1993 a follow-up assessment of plaintiff showed significant improvement in flexibility, strength and function; however, by May 31, 1993 plaintiff gave a meek effort on the maximum voluntary effort test at the work hardening program. Mr. Hornsby noted at that time that plaintiff had regressed with his chronic pain behavior increasingly disassociated from his neck problem.
18. A functional capacity evaluation conducted on June 10, 1993 indicated plaintiff was capable of medium to light work, despite a lack of full voluntary effort by plaintiff.
19. On June 18, 1993 Dr. Kaga released plaintiff from treatment, after having found him to be at maximum medical improvement on May 10, 1993. Dr. Kaga rated plaintiff as having a two percent permanent partial impairment to his spine based upon his subjective complaints of pain. She again recommended that plaintiff go to vocational rehabilitation for assistance.
20. The plaintiff made no effort to contact his employer regarding available work after his release to return to work by Dr. Kaga, but instead sought a second opinion from Dr. Weiss.
21. On July 26, 1993 the plaintiff was evaluated by Dr. Weiss who ordered an MRI and subsequently advised that there was no other treatment modality he could offer for the plaintiff. After obtaining a second opinion from Dr. Weiss, plaintiff made no effort to return to his former job or find suitable employment until October 4, 1993.
22. Curtis Williams, area manager with defendant-employer, often tried to call the plaintiff following the November 16, 1992 injury; however, the plaintiff's telephone was either busy or there was no answer. The defendant had a supervisor's job in Virginia available at the time of the hearing which would require driving between Martinsville, Rocky Mount, and Lexington, Virginia to check on progress of the work crews.
23. On or about October 4, 1993, the plaintiff returned to his job in Lexington, North Carolina; however, before the end of the workday, plaintiff advised that he could not make it the rest of the day. At the hearing, plaintiff testified that the boys on the work crew had performed all the work that day. There is no medical evidence establishing that plaintiff was physically incapable of performing the work assigned. Plaintiff did not make a reasonable attempt to perform the work assigned. Plaintiff's conduct constituted an unjustifiable refusal to accept suitable employment. Plaintiff's disability ended by October 4, 1993.
24. The plaintiff has not returned to work since that date, nor has he made any effort to seek other employment.
25. On October 5, 1993 the plaintiff self-referred to Dr. Gary Roper, an internist in Andrews. The plaintiff complained of chronic neck pain and loss of strength in his left arm. Dr. Roper noted plaintiff's isolated paresis and subjective decreased sensation to light touch were not consistent with the cervical disc problem.
26. On September 8, 1994 plaintiff presented to Dr. Roper with complaints of chest pain which Dr. Roper opined was not related to the job injury. Plaintiff made no complaints regarding his neck at this visit.
27. At no time did Dr. Roper authorize plaintiff to remain out of work.
28. On December 8, 1993, Dr. Charles Branch, a neurosurgeon in Winston-Salem. recommended a cervical collar for the soft tissue injury and noted no significant limitation of plaintiff's range of motion. He authorized plaintiff to remain out of work until the next appointment on January 19, 1994, at which time he authorized plaintiff to return to non-strenuous work that did not involve pulling or pushing more than 15 to 20 pounds and did not involve operating heavy equipment.
29. The plaintiff testified that Dr. Branch authorized him to remain out of work until April 26, 1994. The greater weight of the evidence suggests that such was not the case, and in his deposition Dr. Branch disputed plaintiff's testimony.
30. Dr. Branch has opined that plaintiff was capable of returning to work and assigned a three percent permanent partial impairment rating to the spine due to plaintiff's complaints of pain.
31. The plaintiff did not request authorization for medical treatment provided by Dr. Gary Roper. The treatment provided to plaintiff by Dr. Branch was authorized.
***************
The foregoing findings of fact and stipulations engender the following additional:
CONCLUSIONS OF LAW
1. The plaintiff bears the burden of proving that he is unable to earn the same wages in the same job or other employment.Russell v. Lowe's Product Distribution, 108 N.C. App. 762 (1992). In this case, plaintiff was released to return to work on June 18, 1993 by Dr. Kaga. Plaintiff sought a second opinion from Dr. Weiss who ordered an MRI and subsequently concluded that there was no other treatment modality he could offer plaintiff. Plaintiff returned to his job with defendant on October 4, 1993. Upon his return to suitable employment, the plaintiff worked less than a full day and went home and has not returned to work since that time. Plaintiff has not proven by the greater weight of the evidence that he was medically incapable of earning the same or greater wages as he earned prior to injury after October 4, 1993. Plaintiff has failed to carry the burden of proving that he was disabled after October 4, 1993. Plaintiff's failure to return to work after October 4, 1993 constitutes an unjustifiable refusal to accept suitable employment. N.C. Gen. Stat. § 97-32.
2. Plaintiff is entitled to additional temporary total disability compensation from June 29, 1993 through October 3, 1993.
3. Plaintiff is entitled to such medical treatment as is required to give relief, effect a cure or lessen the disability including evaluation and treatment provided to the plaintiff by Drs. Weiss and Branch.
4. Plaintiff is entitled to permanent partial disability compensation pursuant to N.C.G.S. § 97-31(23) for the two percent rating to the spine as assigned by Dr. Kaga.
5. The treatment by Dr. Roper is not authorized.
***************
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
AWARD
1. Subject to attorney's fee, defendants shall pay to plaintiff additional temporary total disability compensation at the rate of $426.00 per week from June 29, 1993 through October 3, 1993. This compensation has accrued and shall be paid in a lump sum.
2. Subject to an attorney's fee awarded hereinafter, defendants shall pay six weeks of permanent partial disability compensation at the rate of $426.00 per week for the 2% rating to plaintiff's back. This compensation has accrued and shall be payable in a lump sum.
3. Defendants shall pay all reasonable medical expenses, provided by authorized health care providers, arising from plaintiff's compensable injury when bills for same have been submitted and approved through procedures adopted by the Commission.
4. A reasonable attorney's fee of twenty-five percent is approved and shall be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs due this Commission.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________ J. HOWARD BUNN CHAIRMAN
S/ ______________ DIANNE C. SELLERS COMMISSIONER
BSB:jth